Mr. Feldman and Mr. Evers and Mr. Sweeney, you fellas ready to do battle? In the figurative term now, I don't want you to... I want both of you to behave yourselves. I'm sure you will. Good afternoon, Your Honor. Mr. Feldman was arrested, charged, and pled guilty all within the space of a month of unlawful possession of a controlled substance. Commonly known as Vicodin, otherwise known as hydrocodone. It is a pain reliever medication. While that time, he was under arrest. He was incarcerated in the county jail. He was from out of state. And he was offered a deal in which he would plead guilty and get one year of conditional discharge. When you're in county jail, that's kind of hard to pass up. After he was released and he was sitting around thinking about it, he decided that it really wasn't in his best interest to plead guilty, although it got him out of county jail, because he really did have some evidence. He really did have a prescription for this. He said at the hearing. He did not say that. He did not say that at the negotiated plea. Quote, he did not have any prescription. This is the state's attorney's office when he's reciting the negotiated plea to the trial court. He did not have any prescription for any of the substances that were found. The court, Mr. Grigsby, trial attorney. Any objection to the factual basis? No, Your Honor. The court, any objection to the factual basis from the defendant? No. No. And I have to agree that that is state of the record. But again, that's why I start out with the idea that he was arrested. He's in county jail. He's offered this deal to get out. But he's from out of state, and it's very difficult for him at the time, while he's in the county jail, to really get his district. Would you make an argument that anybody can impeach their own statements just because they want to get out of jail? Would there ever be any finality to a negotiated plea? There's finality in terms of his going to a jury trial, in terms of his producing the evidence of his prescription, which he did. He produced the evidence? He produced the prescription? He produced a worker's compensation form by the doctor, which says in that form his prescription for Vicodin was refilled. And that is from the doctor. And these pills that were found, there's evidence to show that they are directly related to the receipt from Wal-Mart or whatever they got it from? That would be for the jury trial. The standard of review, and when we're talking about what is occurring in this case, the standard for the circuit court in determining whether to allow the withdrawal of a guilty plea is whether the defendant has shown a defense worthy of consideration by a jury, whether there is doubt of guilt, and that the ends of justice would be better served by withdrawal of guilty plea. Now, all of your concerns right there, I have to admit, have some kind of validity, but it's in terms of what we would say is a factual finding by the jury at a jury trial, that he does not have the pills within the prescription bottle, which he's supposed to, and which I have to admit he's supposed to have those pills within the prescription bottle. But the factual finding as to whether those pills were covered by the prescription as described by the doctor's report and then later on in the Kmart Pharmacy's statement, which showed that he had a prescription, had filled that prescription, and the last time they filled that prescription was on July 31, 2008. The record does not show a prescription. The record shows that there's a prescription. It does not show the physical prescription. There's a prescription in the record you're telling me. It does not show the physical prescription, which presumably Kmart possesses. It does not show a copy of the prescription. It does not show a copy of the prescription. And it shows circumstantial evidence that there may have been a prescription, right, that there is this evidence that somewhere, sometime, there was a prescription that was given Kmart, and Kmart has physical custody of that. And where that is right now, we don't know. Did he have a prescription for the other drugs that he was charged with? He was not charged with possession of any other drugs. I thought the state said that there were multiple drugs. The state says that he was in possession of some other things, but they don't say what that is and they never charged him with that. So he was just charged with possession of the hydrocodone. He was charged with possession of the hydrocodone and drug paraphernalia. There was some kind of smoking device that they alleged in it, and that was a lesser offense. But, no, there is no showing of what those other drugs might have been. Well, that's not what the factual basis shows. There was a canine alert upon searching the vehicle. I'm reading it again from the state's attorney's recitation to the court factual basis. Upon searching the vehicle, they found a plastic bag containing some pills and substances. One was identified as being hydrocodone phytrate pills. Another one, codeine phosphate pills. He was questioned regarding the substances. Mr. Feldman indicated he believed they may be oxycontin. Did not know for sure whether it was hydrocodone or not. He did not have a prescription for any of the substances that were found. That's right also, Your Honor. But that is what the police believe. And that's what your client and his attorney acknowledge. That is what was stated at the factual basis. But that is not what any drug report ever produced. That is just what the police officers believed those pills might have been. But that's the way they normally do negotiate with police on out-of-state people that want to get conditional discharge and move them through the system. They're not going to keep them there and say, wait a minute, it's going to be six months and you stay in jail. No, we get the lab reports back during that time. I mean, that's normally how they do things, right? Yes, that's one way you get the defendants to plead guilty because they're in the county jail. And that is great pressure. And that you recognize that that is great pressure. And that you recognize that people can be decouraged by that. He's not saying his plea was involuntary, or is he saying that? He's saying that he has a defense-worthy consideration by the jury and that he's pressured into doing this because of his incarceration in the county jail. No, his plea was not voluntary. And that his public defender was not getting the documentation for his prescription. And this was what he had to do to get out of the county jail. The argument that he has not produced evidence of the prescription made by the statement that Your Honor is relying upon is relying upon actually getting the physical copy of the prescription. But once you have the doctor's report for the worker's compensation claim saying we've refilled that prescription, that is really good evidence that he had a prescription. But later on in the jury trial, or maybe if you remanded this case under our alternative theory that there should be a remand because the circuit court did not use the proper standard, then having the defense counsel get that prescription, that physical copy, or a copy of it in their electronic database. I'm not sure what Kmart does with those things. But Kmart is not going to be refilling Vicodin on four different separate occasions unless it had been given a prescription. Consequently, Your Honor, we urge you to vacate the guilty plea. Your time for rebuttal, please. Thank you, Your Honor. Mr. Swaney. I don't think there's much dispute about the law here. It's a matter of discretion of the trial judge whether to allow a guilty plea to be withdrawn. And three of the factors that should be considered are, first, whether the plea was entered under misapprehension effect or law. Second, whether there would be prejudice to the prosecution in allowing the plea to be withdrawn. And third, whether the defendant has a defense worthy to be heard at trial. And here it's three strikes, you're out. The defendant hasn't shown any of those three factors. He hasn't even claimed that he pled guilty under any misapprehension effect or law. He didn't. He knew what the law was. He knew what the facts were. If he had a prescription, he knew it when he pled guilty. And he didn't have a prescription for reasons I will explain. Secondly, prejudice to the people. This defendant was guilty of a number of narcotics offenses. He was caught with at least two and probably three controlled substances in his car when he was arrested. After he pled guilty and after his motion to withdraw the plea was denied, the sheriff's department destroyed the evidence because the case was over then. Then the defendant comes back with a totally illegal motion to reconsider the motion to withdraw the plea. In issue two of my brief, I explain why he had no right to do that. And after the evidence has been destroyed, he persists in his attempt to withdraw his plea. So there's extreme prejudice to the people here. Now, maybe under California versus Trombetta and other cases when involving inadvertent destruction of evidence, we could still prosecute him, but it's going to be a whole lot harder if this case goes back to Montgomery County. And the evidence shows that this defendant was a poly-drug abuser, that he had no legitimate right to the controlled substances in his possession, and that his claim to be legally in possession of Mikeman was simply a fraud. And that's my conclusion, but more importantly, it could rationally be the trial judge's conclusion. It's a factual issue. The trial judge found, and I'm quoting, that the defendant was perpetrating a fraud on the court, and the judge was absolutely right. The evidence showed that the defendant was perpetrating a fraud on the court when he claimed to have a prescription. Now, first, the factors which show the defendant was, in fact, a poly-drug abuser and not a legitimate user of Vicodin are, first, the circumstances of his arrest, which, as you pointed out, he agreed to at the time of the plea of guilty. He was not only caught with Vicodin pills. He was caught with two-and-a-half morphine sulfate pills. He was caught with a hash pipe, which resulted in the charge of drug paraphernalia. Also, there were two sockets with filters of the kind which are commonly used for filtering controlled substances, which were found in his possession. Most of this stuff was sent to the crime lab. He was charged with Vicodin because the Vicodin pills were labeled as such. So this isn't someone who's legitimately taking Vicodin for some injury. Here's someone who's got a legal drug pharmacy right there in his car. So he pleads guilty to the Vicodin, and he has eight months to produce a prescription for these Vicodin pills. It was eight months from the time of his plea to the final ruling of the trial judge denying the motion of withdrawal. Now, during that eight months, does he produce a prescription from the doctor for the Vicodin pills? No, he does not. Plenty of time to issue an interstate subpoena. Plenty of time for the defendant, who's free, to get any documents he needs from Wisconsin. No prescription produced in court. If he can't produce a prescription in eight months on his motion to withdraw his plea, it's reasonable for the judge to conclude that he's not going to produce one if the case goes to trial. Now, what does he produce? Mr. Eversmith spoke himself on trade when he said that the workers' compensation form was a document written by a physician. It's in the record to take a look at if it's not written by a physician.  His second and unlawful motion to withdraw his plea had a document from K-Mark, which indeed purported to show that he was issued 106 Vicodin pills. Now, Vicodin is an opiate similar to morphine. It's used for extreme cases of pain, like after surgery, like when my ex-wife had her knee removed and a stainless steel knee insertion. They gave her 20 Vicodin pills to deal with the pain of surgery. Now, this defendant claims that he was prescribed 106 Vicodin pills for a sprained finger. I mean, unless you're really, really dumb, you can't believe that and presume the trial judge was not really, really dumb. 106 Vicodin pills is for major surgery, perhaps even too much for that, since 106 Vicodin pills would render you an addict. For a sprained finger, the trial judge could reasonably find that those Vicodin pills were obtained by fraud. It's how you do it is you forge a prescription, get a cooperative pharmacist, who's paid off or is a friend of yours, go in with the forged prescriptions and get your Vicodin pills or other controlled substances to feed your addiction. So the trial judge could reasonably find that neither document submitted by the defendant was a doctor's prescription. Neither would have been admissible in a trial. Having prescriptions is an affirmative defense. The defendant never showed that he had that affirmative defense. And so, as the judge found, he was perpetrating a fraud on the court in his motions to withdraw the plea. Another factor which showed that this defendant was an addict illegally obtaining controlled substances was what happened at the final motion to withdraw the plea. He hadn't paid his court costs. The state's jury said, okay, we'll let that pass if you'll take a drug test as required by your conditional discharge. And the defendant refuses outright to take a drug test. He's jailed for violation of his conditional discharge, post-bail, and doesn't show up for the court hearing, which is why I say in my brief he's a fugitive from justice. So he's caught with multiple controlled substances. He never produces a doctor's prescription. His document from Kmart shows a ridiculously large number of Vicodin pills, which no legitimate physician would ever prescribe, probably for anything, but certainly not for a sprained finger. And he refuses an open court to take a drug test and flees the jurisdiction. Now, isn't this enough for a judge to find that the motion to withdraw the plea is a fraud, as indeed it was? Now, the claim that he pled guilty only to get out of jail is really suspicious if you look at the record, because the case was set on a motion to suppress evidence, and he pleads guilty before that motion is heard. Now, if he had won that motion, he would have gotten a get-out-of-jail-free card right there. So he didn't plead guilty to get out of jail. He pled guilty to avoid litigating the case. So for these reasons, I ask that this court find that the trial court judge properly exercised his discretion on the facts to find that this motion to withdraw the plea was a fraud. How do you think the appeal is even timely? Well, it's timely because you granted a late notice of appeal, not for any other reasons. For the reasons I explain in Issue 2 of my brief, the defendant has no right to file successive post-trial motions. Once one's denied, that's the end of it. You don't get a right to file another one. So if this court had not granted the need to file a late notice of appeal, then this appeal would have to be dismissed. So for these reasons, we ask that the judgment of the trial court be affirmed. Thank you, counsel. Mr. Everett, are you ready for rebuttal? Yes, sir. Mr. Sweeney imagines a lot of things. He imagines that there's some kind of forgery going on, some kind of fraud, some kind of connivance with the pharmacy, the Kmart pharmacy. All of which is just real supposition and fantastical thinking at this time because he can't show any of that by any evidence. I'm comforted to know that he is so versed in medical knowledge and being a doctor that he's able to say that 106 pills is just ridiculous. A torn tendon in the finger, I'm not sure. People's level of pain is different. The workman's compensation report by the doctor was that he was being treated for it. It wasn't simply a sprain. It was a torn tendon. And that doctor found it appropriate to refill that prescription. And that prescription, that report, it was done on July 31, 2008. Not too long before he was arrested at the Coalfield rest area and charged with these offenses. The state talks about the evidence being destroyed by the police, but there's no showing that they did that in consultation with the state's attorney. Could you address his last argument? What? Could you address his last argument that he made, that your client was a fugitive and therefore filed that? I think that's one of the most meritless arguments that the appellate prosecutor has made in this court. Because he was called in for this hearing. He did not take the drug test that was ordered, but he was allowed out on bail. And then there was going to be another hearing. And at that hearing, he did not appear. I have to admit that. But there are lots of reasons why he didn't appear. And there was a warrant issue. And then immediately thereafter. No, two days later. Immediately thereafter, on that arrest warrant, the words, until this appellate court decides whether his motion to withdraw guilty plea should be allowed. That's in the document? Yes. I'm not doubting that. Do you have a copy of it here? My docket sheet shows that warrant for arrest quashed and that was crossed out and put stay. It wasn't quashed. The warrant for arrest was stay after the notice of appeal was filed. And there's the docket entry in which. Here, counsel, the docket copy that I have here in front of me shows that he filed his bail bond on June the 30th of 2009. That was returnable on July the 20th of 2009. And the court's note says, defendant, FTA, fails to appear. CM, whatever, bond to apply, WA $15,000. Warrant for $15,000. And then it shows warrant for arrest two days later on the 22nd of July. Warrant for arrest quashed, and then you can see where that was crossed out and the judge's initial, and then he put the word stay until appeal finalized. The docket entry of. The docket for July 22nd provides that the warrant of arrest is stayed until appeal finalized. Right. And that doesn't mean that he's not a fugitive. It means that the court did not want him to necessarily have to appear. I don't believe that this court would find that any police agency would arrest him based upon that. And I don't believe that you would find the circuit court thinking that he's a fugitive from justice. There's lots of reasons why people do not appear. And when defense counsel goes in and talks with the circuit court judge in chambers and tells them what that excuse is, I'm not sure why it's great to be told the judge. Don't you think something's going to happen when we decide this case? Yes, I believe that. If we rule against you, don't you think this warrant's automatically going to go into effect? No, I believe that the circuit court's going to set a hearing and they're going to send notice to Mr. Feldman, and everybody is going to expect that he's going to show up. If you remand him with a vacation that's guilt-free or remand him for further proceedings on his motion, we can have the circuit court look at the correct statement. In the unlikely event that we affirm the trial court, do you think there's going to be any further action? I believe that they will set a hearing in which he will be given notice and that they are expecting him to show up. At that point, if he does not show up, then maybe they will send out the arrest warrant. Why wouldn't this just automatically go into effect? Because the— What's the purpose of having another hearing if there's already an arrest warrant by an issue? Yes, Your Honor. Okay. But it's for him to appear to answer to the allegations about the motion or petition to revoke his conditional discharge. He would have to appear for that. And the quashing of that and saying that this court—the court's going to wait for this court to issue a decision indicates that they are just going to believe that he is going to be given notice and show up. And if not, then that warrant—they will issue a warrant which somebody might serve on him in the near future. Thank you, Your Honor. Appreciate it. Appreciate both of you all's arguments today. Very interesting case.